Good morning, Your Honors. Thank you for giving us the opportunity to argue this case before you and thank you for your time. I am Harry Lau from La La Harry St. Edwards representing the Dhillon plaintiffs today with regards to the COVID-19 case and what a way to end my career as a retirement after 44 years ending up on the doorsteps of the Ninth Circuit. Congratulations. Thank you. So, Your Honors, we have three interesting, very interesting issues in this case on COVID-19. The first one being the causation, medical causation issues with regards to the cause of COVID-19, whether or not the expert witnesses are needed in COVID-19 cases. The second one being leave to amend the complaint, which the district court denied, which we thought was a very harsh rule that they imposed under Rule 15a. And the third one was the late designation of experts where there were exceptional circumstances. So allow me to start off with the basic facts in this case, and I don't want to reiterate the facts. The facts are very extensive in this case, but very basic, Your Honor. This started. So just for the record to indicate and establish fact that there was hardly one single COVID-19 case in the state of California, particularly in San Francisco, where they boarded the ship. There was only one reported case in Seattle, Washington, and that was the only one. The second thing to note, Your Honor, none of the appellants, the plaintiff in this case, had any symptoms of COVID-19 while they traveled all the way to board the cruise liner on February 11, 2022, A005. And then the third thing to realize is that Princess actually allowed Chinese nationals, one Chinese national with COVID-19, to actually go on the Voyager accidentally, and there was the error. The fourth thing to realize is a basic fact in this case is that Voyager A005 leaving San Francisco to Mexico was the only time there were 10 cases of COVID-19 reported from Hawaii to San Francisco, and the same Voyager went to Mexico. That being said, Your Honor, let's hit on the issue of causation, which I think is very important, whether or not medical experts are needed to testify on COVID-19 cases. The district court in this case relied on a case called a complicated set of facts. It's not like a COVID-19 case, Your Honor. In COVID-19, we had a total of 98 million Americans. One-third of the United States of America suffered COVID-19, one way or another. A million people died. Are you arguing that you didn't need an expert to prove causation in this case? I'm sorry, Your Honor. Are you arguing, do I hear you arguing that an expert wasn't necessary in this case? The case that I'm citing, Your Honor, is Kluwer v. Burlington. No, in your case, is your position that you didn't need any expert testimony to prove causation? Pardon me, Your Honor? In your case, is it your position that you didn't need any expert testimony to prove causation? So in our case, Your Honor, assuming there was no expert testimony given, the issue would then be how would we prove the causation issue? So then we rely on Salem v. United States. This is the United States Supreme Court, Your Honor, case, 1968 case. In that case, the United States Supreme Court said there is no need for expert testimony when the witness themselves can give you basic facts in an intelligent manner for the jurors to understand. What the factual circumstances are. Now, in this case, Your Honor, under the Seventh Amendment of the United States Constitution, we cannot have jury trial in maritime cases. So what we have in this case is a trial by judge. The district court would have tried this case. For the district court to understand the causation issue from a lay person's testimony, plaintiff would have actually testified how they got COVID-19, where they traveled from, where did they come from, how did they board the ship, what was their medical conditions before they entered the cruise liner, and when did they actually get infected. Each one of the plaintiffs testified that they got infected six to seven days after being on the cruise liner. So in Salem v. United States, Your Honor, and we have cited the case in our opening brief. We also cite a case called Washam v. WORSHAM v. A.H. Dillon. That's the Eleventh Circuit case. That is a complicated product liability labeling case. In that case, the Eleventh Circuit said, the standard over here is very simple. You don't need experts to testify in these cases. This is very simple labeling cases. Plaintiff in this case. This isn't a labeling case. This is about transmission of a virus, and several of the plaintiffs in this case didn't test positive for some period of time after they left the ship. In some instances, several weeks where they had other opportunities to be exposed. So what do we do about that? Well, we look at the factual circumstances, Your Honor. When they left the ship on, I believe, on February 25th, they went back to their families that they came to pick them from the ship from the ship at the docking spot. All right. And none of their family members that had dropped them earlier and the bus drivers, the bus van, the van drivers that dropped them earlier had COVID-19. Nobody had any symptoms of COVID-19, except these plaintiffs who are coughing. They were this had serious issue, the ILI symptoms, and they had a fever with them. So apparently you look at the factual circumstances after they left the cruise liner. Okay. They went to the same people that actually had dropped them. And then the same people that came to pick them up. The van drivers that came to pick them up, plaintiff testified, none of them had any symptoms. The family members they stayed with in San Francisco, they went back to their house. None of them had any COVID-19 symptoms. When some of the plaintiffs... When did the ship return? When did the ship return from its sail? Pardon me, Honor. When did the ship return from the sail? I believe it returned on February 25th, 2020. So there was a gap of about five to six days. And the Honor should also note that during that period of time, there was no COVID-19 testing available. But wouldn't you need an ex... Yes, I recall. But wouldn't you need an expert to testify as to the period of incubation for your plaintiffs? If your argument is that they were... They contracted COVID on the ship and then they experienced symptoms sometime later, wouldn't you need someone to testify about how COVID worked? They did testify, Your Honor. They actually... They testified... I'm saying an expert because how would a lay person be capable of testifying as to COVID when even in February 2020, we knew very little about COVID. We think we know more now. But what was known at the time and what's the reality of the situation? Well, the reality of the situation would be what we're looking at is what we call the incubation period. So the incubation period is between five to 10 days. Don't you need an expert to testify to that? Well, in that situation, Your Honor, we had plaintiffs testify when they actually got COVID-19. Now, assuming that we need an expert to come and say that the incubation period is from five to 10 days, the medical doctor on the ship already gave a deposition testimony that incubation period was from five to 10 days. So we could use the medical doctor's testimony. We could use the defense expert testimony for the incubation period. And the jurors, or in this case, the trial by judge, would make a conclusion as to the incubation period and the time frame within which the plaintiff got COVID-19 on the ship. Counsel, my understanding is that the laws, they tested negative after they left the cruise. And Sunita didn't test positive until December of that date. What I have is the Dillons tested positive, but not until March 10th. So that's three weeks after disembarking. Richard Pampolon, I may be mispronouncing that name. If so, forgive me. I don't see that he ever tested. Mr. Secorn or Secorn? Secorn, yes. Secorn, thank you. Testified positive, but not until March 4th. That's right. And so that's our problem. That's one of the ship. That's about the 26th or the 27th of February, 2020. Am I correct? It might have been the 21st. At least one of the Dillons, I think, disembarked on the 21st, but maybe it was staged, but at any rate. Okay. So let's say 23rd or 24th. So they traveled all the way to Vancouver, British Columbia. During this time frame, they had influenza, coughing, and fever. All right. And there was no COVID-19 test available anywhere in the United States of America or in Canada. Between February 20th, by the time they got off the ship, February 20th, 2020, to March 10th, 2020, there was no COVID-19 test. That's part of the problem, sir, it seems to me, because the COVID symptoms that we've all experienced, you know, sometimes they're the same symptoms. You test positive for COVID and sometimes not so much. I mean, I think we've all had the experience in the last few years of sneezing or coughing and running to take a COVID test, and it's negative. So we realize that. Right. So doesn't this make it very important that you have an expert? How would a lay person know the difference between... So, Your Honor, that's why the testimony and the declaration, the testimony of the plaintiffs in this case, the appellant in this case, is very important. It is from the testimony you can figure out when exactly. So when they got off the ship, they testified that they had fever, that they had... At least two of them tested negative. Pardon me? And at least two of them got off the ship and tested negative. Two of them tested negative. Yes, they did. And two of them never tested positive, though two of the Canadians. But you said there weren't tests at that time when they got off the ship. Pardon me? How were they testing negative or positive when we didn't have tests? Well, the only way you can determine that, Your Honor, is from the testimony of the witnesses in this case. I know there is a lapping time from the time you get off the ship to the time you get home. But you look at the medical conditions before they got off the ship. And if they had fever, if they had influenza, if they had coughing, if they had sneezing, that means they had the ILI symptoms. And the question... Right, but so if they had symptoms that could have been flu or could have been COVID, and they tested negative for COVID or they didn't test at all, don't you need expert testimony to say those symptoms were COVID, not flu? Well, that, Your Honor, is a question that from the time you get incubated, when exactly does COVID-19 come into you? It starts off with the influenza symptoms. And I realize that you need expert to testify. But again, you are putting this evidence in front of a trial judge, okay? And assuming that defense experts were called to testify, then based on the defense experts and based on the symptoms that the plaintiffs are saying, the trial judge can easily make a conclusion as to where, how, and what was the timeframe within which they got it. Except that it's your burden to put on a prima facie case in the first instance. Yes, I agree. So, but in fact, didn't you come up with expert disclosures that were just deemed untimely? The timeliness is what you're asking me, Your Honor? I don't know why I can't be heard today, but... So you did in fact propose experts, though, didn't you, at some point? Yes. Well, the question is, where do the experts come in as compared to the lay witness testimony? Again, we come back to the same issue. But did you at one point proffer experts, but the district court excluded them because your proffer was untimely? Well, two of them did not have any. I agree with the fact that two of them did not have any after they got off the ship. But the issue... Judge Wardlaw's asking a different question. Pardon me? Judge Wardlaw's asking a different question. She's asking, weren't your experts excluded pursuant to Rule 37? Well, if... Are we looking at the timeframe of the experts? No, we're looking at whether you had experts that you offered and the judge excluded them because they were late. That's right. So there was a late designation on the experts. So you had experts, right? We don't have experts. The late designation were not granted, Your Honor. Right. But you did at some point realize maybe we needed expert testimony and you offered to provide experts. Well, that's the whole issue, Your Honor, is that do you really need experts? And there's a host of cases, Your Honor, even the Ninth Circuit case on Ramney versus ITW Foods, which is a Ninth Circuit case where the hand of a person was caught in the grinder. It was a complicated product liability case. The Ninth Circuit in that particular case said, we don't need experts to testify how the hand got caught in the grinder. We can have a lay witness testify as to what happened over here, whether or not the machinery was in function or not. So then we have another case called Yim Lian Tan. That is the Northern District, California case. Well, you're over your time, but I will give you some rebuttal time afterwards, but I think we need to hear from Mr. Wiener first. Thank you, Your Honor. Thank you so much. Thank you, Your Honor, and may it please the Court, David Wiener appearing on behalf of the Appalachian Princess Cruise Lines. Judge Pragerson properly granted summary judgment in this case, and he also did not abuse his discretion in denying leave to amend or in permitting the untimely expert designations. With respect to summary judgment, Judge Pragerson, consistent with Ninth Circuit precedent, precedent from other circuits, properly recognized that expert testimony was required to determine causation in this case. They have expert testimony. So the experts that plaintiffs came up with were designated on literally the last couple of hours of the window for expert discovery. So it was two months after the deadline. So our problem is I think they were excluded pursuant to Rule 37. That's correct. So what about R&R sales? I don't think you responded to that precedent. Your Honor, I think... I don't think that it was pressed in front of Judge Pragerson, but I think that... But it's binding Ninth Circuit authority. I understand, Your Honor, and I think, though, that Judge Pragerson actually was a step ahead of us in the district court because he actually made the findings that are required. Where did he make the finding that there was no less serious alternative or whatever? He specifically addressed that in his harmlessness analysis. The plaintiffs had proposed an alternative measure of paying $9,000 for... Can you give us the ER site where you think that he made the R&R sales findings? I agree that I think there are places where it looks like he came close, but I'd like to hear what you think is the best shot. Sure. And he actually cited... It's at ER 17, Your Honor. I'm there. So, actually, it starts on ER 16 and then into ER 17. It's in his harmlessness analysis. He says that the late disclosures were harmless because plaintiffs offered to bear the costs of deposition fees if we wish to reopen discovery. And he goes on to explain why that is not sufficient as a remedy. He specifically then cites this case in Genco Holdings, which Judge Pragerson actually wrote. And the page site that he cites to from Genco Holdings is the section in that case where they talk about the R&R sales analysis. I think this is as close as it comes. This is what I have starred in my iPad. So I think you've answered my question that you think that's as close as it comes. And I think... Is that right? Yes, Your Honor. And I think what Judge Pragerson also says here, though, is that he makes it clear that it's not sufficient to do that because it's not sufficient just to have the depositions paid for because you've got to reopen discovery. You've got to... This was done literally days before the summary judgment motions were due. So you've got to vacate the summary judgment motions. Our motion was written at the time that we received these expert designations. So all of that work goes out... I appreciate the equities. I appreciate the equities. I'm just looking for compliance with R&R sales. And again, Your Honor, I... A separate question. Sure, Your Honor. I think that you argued in the district court, and you certainly did on appeal, you made the representation in your red brief on appeal, that the plaintiffs didn't have an expert for a different reason, and that is the failure to satisfy basically 702. That's correct, Your Honor. I don't think that the plaintiffs responded to that argument. That is correct. They didn't respond to that below or on appeal. And the argument that we made, this is Dr. Fox, who was the causation expert. And if you look at his opinion in this case, it essentially groups together all of the plaintiffs. It doesn't address... Your Honors, obviously, are very familiar with the record and the very different types of symptoms and testing regimens that these plaintiffs had. And what Dr. Fox does here is he lumps everybody together, and he just says, well, these folks said that they didn't come into contact with anybody who was from China, and then they said that they had these symptoms on the vessel, and therefore, I think they all had COVID. That doesn't satisfy 702. It's notable as well, Your Honor, one of the arguments that plaintiffs made, both in the district court and on appeal, with respect to Dr. Fox in particular, is that we had an opportunity to depose him in the Doherty case. But if you look at his opinions here, they obviously, and compare them to Doherty, obviously, the Doherty opinions, it's a different voyage. This one ended on February 21st, so it's the voyage that preceded the Doherty case. Obviously, Dr. Fox's opinions in Doherty on causation are not going to be relevant here, but also his opinion on incubation is incredibly different. As you know, in Doherty, he relies entirely on the six-day, what he describes as the average. Here, he says in his opinion that symptom onset is between three days and 14 days. His methodology also is entirely different in this case than it was in the Doherty case. But I don't think the district court reached this issue. Is that right? Judge Pregerson did not address the 702 issue. But I need a little help on this, if I could, please, because at page 22 of the reply brief, there's this argument about CLAR. Are you familiar with what I'm talking about? I'm not sure how you would interpret this, counsel. I'm trying to figure out whether the plaintiffs responded on appeal. To your 702 argument. There's a sentence that says, even though this court denied plaintiff's request, that the court give them still another chance. The court made its reference to Carpenter. Well, maybe the first sentence in this paragraph says, the district court's reliance on CLAR was erroneous and incorrectly applied 702. So. And then it says, since it manifestly erred in rejecting the Crawford expert testimony is unreliable. I can't find a place where Judge Pregerson did. I think, Your Honor, and I, obviously, this was not our brief. I think what the argument that is being made here is that the decision in CLAR to exclude the expert was erroneous. Well, I understand that. But I'm trying to figure out the first sentence here. But nonetheless, the district court reliance on CLAR was erroneous and incorrectly. Well, so CLAR, of course, has two holdings in it. There's a holding on 702. And there's in finding that the expert testimony was admissible. But then CLAR also goes on to talk about how expert testimony was required. Judge Pregerson specifically relied on CLAR with respect to the need for expert testimony. Right. But Judge Pregerson did not specifically address our 702 argument. And therefore, I don't think it would be correct to say that he was relying on the part of CLAR that excluded the testimony of the expert. I don't think it could have been. I think that has to be right. And... So did you argue forfeiture? With respect to... Your 702 doubt, Baron? We did. We said that they waived any argument on that. And we... I have your... Okay. We argue that in our summary judgment briefing, Your Honor, in our reply, we made that argument that they hadn't responded to the 702 issue. Okay. That answers my question. So you're arguing that they forfeited the expert reliability argument in the district court, not before us. Well, I think... I mean, I think the one sentence that Judge Christin just cited to you, I think that is the only time that the 702 issue was addressed by the appellants in the 9th Circuit. Right. So you're saying they did raise it. They did mention it. Because if you're saying that the CLAR part was that the court relied on the need for experts and not the part that talked about the reliability of the experts, Section 7... I mean, Rule 702, in fact, is an expert reliability standard. And they say they argued both. Well, I mean, I think they have this one sentence in their reply... Do you think it's inadvertent that they put that in as a separate argument? I'm sorry. I didn't hear you, Your Honor. Do you think... Okay. Is my mic working? Do you think it's inadvertent that they put this as a separate argument in that paragraph? In their... That the appellants did a reply brief? I don't know. Okay. I mean, I think typically... But really, this isn't about Daubert anyway, because the district court didn't really make a ruling on the Daubert question. Judge Pragerson did not specifically address it. But I think our argument, both below, was that they waived it there. And then on appeal, the only time they raised it is in their reply brief. And traditionally, that's not an appropriate way to brief an issue. I think we made sufficient arguments, both in the district court and here, for this court to... You're not asking us to rule in your favor on Daubert when the district court didn't reach it. I think the court could certainly rule that the issue was waived. And on appeal, your red brief in our court said there's two reasons they don't have an expert. Correct. And one of them is that they were late, and it was excluded pursuant to Rule 37. And I think one of them is that they never responded to your Daubert. Correct, Your Honor. That's exactly right. And they never addressed it in the district court. And as I said... But it would be peculiar for us to reach it in the first instance. The district court didn't reach it. You'd have to be relying on forfeiture, because we have no ruling from the district court. I agree with Judge Wardlaw. Correct. Unless he did it from the bench somewhere where we can't see it. He did not, Your Honor. But, Your Honor, that's the argument that we made in the district court. In our reply brief on summary judgment, we argued that they had waived the issue because they didn't respond to it. And in our brief in this court, we made the same argument. They hadn't addressed it below. They hadn't addressed it here. And so I certainly agree that Judge Preggerson did not specifically address 702. But I think the waiver issue is sufficiently argued both below and here for this court to conclude that that is an adequate basis. I also, as I said before, I do think that Judge Preggerson made the sufficient findings under Ngenko Holdings. 702 Ngenko Holdings made the findings required by R&R sales. He was very clearly familiar with what the standard was. He also specifically... His discussion of substantial justification was essentially finding a fault on the part of plaintiffs for the delay. He... I don't think that has ever been contested in the plaintiff's briefs on appeal. The justification simply didn't make sense. They had ample time to obtain any discovery they needed. They ultimately provided their testimony to the experts by way of declarations. As Judge Preggerson explained, they could have done that at any point in time. They had absolutely no need to wait for these deposition transcripts to be prepared and presented to the experts. And in fact, once the experts had them, the expert reports are actually dated in mid-December. And inexplicably, they still weren't served on us until December 31st. So I think Judge Preggerson properly found that the justification offered by the plaintiffs was essentially entirely their fault. There was no attempt to enter a stipulation to extend the expert discovery deadline. The motion that plaintiffs filed didn't come... It wasn't filed until well after the discovery deadline had ended and just days before summary judgment. And in essence, what the court explained and what this court has repeatedly held is that when you're in this situation, you can't just rely on self-help. It's the same analysis essentially that applies on the motion for leave to amend. And that's... The plaintiffs did the same thing there. The court said, I think it was in Johnson v. Mammoth Recreations, that a Rule 16 scheduling order, it's not just some random piece of paper. It plays an essential role. But I think there is a mistake as to what Johnson does or doesn't say, right? Johnson talks about the need to rely on or satisfy Rule 16, right, to amend a complaint if the reason the complaint is late is because it blew a deadline in the scheduling order. As far as I can tell, there isn't a deadline to file amended pleadings in this case. I don't know why. That's correct, Your Honor. But I did go back and look at Rule 26, and it seems the parties didn't ask for one. I think that's correct, Your Honor. But there was... So how do we get around... We have explained this in subsequent case law that Johnson doesn't say, have this scope that the district court gave to it here. Well, because in addition to asking for leave to amend, plaintiff's request was to amend the scheduling order. Right, and so that would require the Rule 16 standard. And the court clearly finds that they didn't satisfy the Rule 16 standard, but he also articulated that he wasn't going to reach the Rule 15 standard. Well, but at that point, in order to have an amended complaint, the scheduling order had to be amended. Why? There's no deadline in the scheduling order to amend the complaint. Because plaintiff's request to amend the complaint was to bring in new parties and new claims. Well... There would have needed to be brand new discovery. This would have been really helpful if that had been articulated. It's not. I understand that, Your Honor. Right. But I think the argument that we made to Judge Pragerson and what Judge Pragerson found was that you couldn't amend without reopening discovery, and the discovery deadline had unequivocally passed at that point in time. Yes. It was six weeks past the discovery deadline. So the good cause standard had to be met one way or another, either with respect to the express request to amend the scheduling order, but then also it was essentially implicit in the request for leave to amend the complaint, because you simply could not have an amended complaint bringing in brand new parties. Carnival Corporation, Carnival PLC, they had not had any opportunity for discovery at that point. There had been no discovery taken against them at that point, which is one of the things that plaintiffs wanted. So the scheduling order was going to have to be entirely redone. All of the trial, the trial dates, the pre-trial dates, all of that was going to have to be vacated, which is exactly what Judge Pragerson found in denying the plaintiff's motion on that. I think given the generally broad scope that district courts have to control their docket, especially in a very busy district like the Central District, Judge Pragerson's decision to say, we have to stick to the scheduling order unless there's some really good cause shown, was eminently reasonable. The findings on good cause are not seriously in dispute. They weren't really below, and they're not really disputed in this court. And on that basis, we would submit that this court should affirm. There are no further questions, Your Honors. Okay, thank you. Okay, Mr. Lowe, I'll give you a minute to sum up. Thank you, Your Honor. One more time. Let me just focus on the issue of the designation of expert, which the Honors already raised in this matter. There are two important issues, Your Honor, with regards to Rule 26A. And I know that there was a late designation as far as the plaintiff, the appellants were concerned in this case. When we look at 26A, Your Honor, we talk about substantially justified and harmless. So Your Honor already raised the issue that appellants in this case, they were approximately 53 days late in the designation of the experts. One of the reasons we gave was because the deposition transcripts were late in the matter. And the experts, Dr. Barry Fox, the Chief of Medicine at Wisconsin Medical School of Infectious Disease, Dr. Troy Royce, they submitted extensive reports, but they were approximately 52 to 53 days late. We informed the respondents in this matter that it would be late coming as far as the experts' reports are concerned. But on top of that, let's look at the issue of harmless. What's the issue of harmless over here, Your Honor, when we offered $9,000 in cash to cover the deposition cost of all the experts in this case? The trial date was in March 31st of 2022. And we offered 90 days before the trial date, and these experts were already deposed, by the way, in three other COVID-19 cases, same experts. The testimony would have been exactly the same, nothing different. The shifts didn't change, the voucher didn't change, remained exactly the same. So we offered $9,000, and there are case law, there are Ninth Circuit case law that says that in a good faith effort to offer the money to make it non-harmless, the respondents, Your Honor, princes refused to accept the money, saying that our intention is to disqualify you for the lateness. Now, the Ninth Circuit has given the district court too much discretion as far as 26F is concerned on the discretionary designation of expert witness. And the harshness of the rule the district court's exercises in this case is far beyond one's imagination. So when we go to the 11th Circuit, look at what the 11th Circuit is saying, Your Honor. The 11th Circuit is saying, and there is a 11th Circuit case on this matter, Your Honor, which I will cite to you, Salgado versus GM, 11th Circuit, 1998. The 11th Circuit said, if there is a late expert designation, you don't exclude that expert just because the district judge has the power to do that. That is a very drastic remedy. So drastic in nature that you can wipe out thousands and thousands of plaintiffs that may have a legitimate case. So in this case, indeed, they were late, but the application, there was no flagrant violation, Your Honor. It wasn't intentional as if somebody sat on it. So when you look at Yeti, Your Honor, which is a Ninth Circuit case again, 2001, two years later, the Ninth Circuit, the district court allowed expert designation, two years later. All right. Thank you, counsel. Thank you. Thank you, Your Honor. Dillon versus Prince's Cruise Lines will be submitted, and we're going to engage in a five-minute recess at this time.
judges: WARDLAW, CHRISTEN, SUNG